## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEPHEN J. GILL, an individual,<br><br>*Plaintiff*,<br><br>v.<br><br>EVERYDAY DOSE, INC., a Delaware corporation,<br><br>*Defendant*. | C.A. NO. |

**COMPLAINT**

Plaintiff Stephen J. Gill alleges for his complaint against Defendant Everyday Dose, Inc. ("EDI"), on personal knowledge as to his own activities, and on information and belief as to the activities of others, as follows:

## INTRODUCTION

1. Plaintiff Stephen Gill is a very successful and well-known investor and advisor of young companies. In 2021, Defendant EDI solicited Gill for an investment in the company. At the time, EDI was a new startup company without any operating history, and a desperate need for capital.

2. Gill was unwilling to invest in EDI unless the company would also engage Gill as an advisor so that he could help the fledging company gain traction to maximize his investment and receive compensation for his advice.

3. To induce Gill to invest, and to secure Gill's advice and mentorship, EDI's CEO Jack Klauber offered Gill an Advisory Agreement. Under it, Gill would receive 400,000 shares of EDI stock in exchange for advising the company. In May 2021, the parties agreed to that deal and Klauber confirmed: "you have 4% equity vested over 4 years." Klauber later sent a capitalization table—the document showing all stockholders and their holdings—again confirming Gill's 400,000 shares granted under the Advisory Agreement.

4. In June 2021, in reliance on that deal, Gill agreed to invest $100,000 in EDI under a Simple Agreement For Equity (SAFE). But in truth, EDI and Klauber never intended to issue the 400,000 shares of stock to Gill. Had Gill known that EDI and Klauber did not intend to perform under the Advisory Agreement, he never would have invested the capital. And had he not invested the capital and advised the young company, it is unlikely EDI would have achieved success.

5. In reliance on EDI's promises, Gill provided significant advice that led to EDI's substantial success. Now, after the company executed on Gill's advice and it has grown in value, his equity in EDI as provided under the SAFE and Advisory Agreement is worth $9,894,866.79. But EDI has refused to issue that equity.

6. Gill sues EDI for breaches of the SAFE and Advisory Agreement, and fraud for inducing him to invest and advise when Klauber and EDI never intended to issue him his stock.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties are diverse—the plaintiff resides in Puerto Rico and the defendant resides in Delaware—and the amount in controversy exceeds the sum or value of $75,000.

8. This Court has personal jurisdiction over Defendant Everyday Dose because it is incorporated in Delaware, has systematic and continuous contacts with Delaware, and at least one claim alleged in this complaint arose out of EDI's contact with Delaware, namely breach of an agreement for the sale of shares of stock in a Delaware company.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because EDI resides in this district.

## PARTIES

10. Plaintiff Stephen J. Gill is a citizen of the Commonwealth of Puerto Rico and resides in Puerto Rico.

11. Defendant Everyday Dose, Inc. is a Delaware corporation having its principal place of business located at 8015 Burleson Road, Suite 100-C, Austin, Texas 78744.

# FACTS

12. In early 2021, EDI was a startup consumer-goods company with few funds and no operating history. To raise the capital the company needed, EDI's CEO, Jack Klauber, actively recruited investors, including Gill.

13. Gill, an experienced investor and advisor to startup enterprises, knew that EDI was likely to fail as most young companies do. So he made clear that if he were to invest in EDI, he would want to have an advisory role in the company to help it succeed, and equity as compensation for his advice and time.

14. Gill and EDI CEO Klauber spent a number of months negotiating an Advisory Agreement and in May 2021, Klauber agreed to give Gill the advisory role and 400,000 shares in the company—a 4% stake at the time. The shares would vest over four years in recognition of Gill's substantial contributions in operations and strategy.

15. Klauber outlined the terms of the Advisory Agreement in an email that he sent to Gill and another advisor on May 6, 2021, confirming that Gill had 4% equity, vested over four years. Klauber also created and circulated capitalization tables showing the 400,000 shares reserved for Gill. The May 6 email read: "Attached are your Everyday Dose advisor agreements. Each of you have 4% equity vested over 4 years."

16. Klauber and EDI knew that the representations regarding the Advisory Agreement and Gill's rights under it were false, or they were recklessly indifferent to their truth. EDI intended for Gill to rely on these representations and invest the money that the company desperately needed.

17. Relying on EDI's promise to perform under the Advisory Agreement, Gill agreed to the company's request for a cash infusion. He committed $100,000 through a Simple Agreement for Future Equity (SAFE), which EDI and Gill executed in June 2021.

18. Under the SAFE, Gill was to receive shares of preferred stock when an Equity Financing event occurred. "Equity Financing" was defined as a transaction or series of transactions with the principal purpose of raising capital, pursuant to which EDI would issue and sell preferred stock at a fixed valuation. The SAFE provided for a post-money valuation cap of $12.5 million and a 90% discount rate.

19. This was a significant concession by Gill because consumer-goods companies are usually valued on a multiple of sales. But when EDI approached Gill, the company had no sales, so a $12.5 million cap was extraordinary. Gill would not have entered into the SAFE and invested the money on those terms had he known that Klauber's representation that Gill would have 400,000 shares under the Advisory Agreement was false.

20. Following the execution of the SAFE and his $100,000 investment, Gill provided substantial time advising the company in ways that led to its success.

21. Under the SAFE, Gill is entitled to 110,045 shares in the company.

22. Under both the SAFE and Advisory Agreement, Gill is the rightful owner of 510,045 shares in the company. According to the terms of the SAFE and the current valuation of the company, the total value of the shares owed to Gill is $9,894,866.79.

23. In or around July 2024, EDI consummated a financing round under which it issued Series A Preferred Stock. Thus, the Equity Financing event triggering conversion under the SAFE of Gill's $100,000 investment into stock has occurred.

24. On July 8, 2024, Klauber acknowledged that Gill's $100,000 investment, plus accrued interest, entitles him to at least 110,045 shares of stock.

25. Now, EDI refuses to issue to Gill the shares to which he is entitled under the SAFE and Advisory Agreement, despite its representations promising such shares and acknowledging his rights to them.

26. Gill has been harmed by EDI's refusal to issue shares to him.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – The SAFE)

27. Gill hereby incorporates the preceding paragraphs as if fully set forth herein.

28. The SAFE constitutes a valid and binding contract between Gill and EDI.

29. As a party to the SAFE, Gill is entitled to enforce its terms.

30. Gill performed his obligations under the SAFE—namely, he invested $100,000 in the company.

31. EDI materially breached its obligations under the SAFE by failing to issue 110,045 shares of stock to Gill after the Equity Financing occurred.

32. Gill has been damaged by EDI's breach of contract in an amount to be proven at trial, estimated to be valued at $2,134,866.79.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract – Advisory Agreement)

33. Gill hereby incorporates the preceding paragraphs as if fully set forth herein.

34. The Advisory Agreement constitutes a valid and binding contract between Gill and EDI.

35. As a party to the Advisory Agreement, Gill is entitled to enforce its terms.

36. Gill performed his obligations under the Advisory Agreement—namely, by providing managerial and operational support to EDI.

37. EDI materially breached its obligations under the Advisory Agreement by failing to issue 400,000 shares of stock to Gill.

38. Gill has been damaged by EDI's breach of contract in an amount to be proven at trial, estimated to be valued at $7,760,000.00.

### THIRD CLAIM FOR RELIEF
### (Fraud)

39. Gill hereby incorporates the preceding paragraphs as if fully set forth herein.

40. On May 21, 2021, EDI represented—through an email sent by its CEO, Jack Klauber—that Gill was entitled to 400,000 shares in the company, in exchange for his investment and time as an advisor.

41. EDI also represented, through the SAFE, that it would issue shares of preferred stock to Gill when an Equity Financing event occurred.

42. However, EDI knew that these representations were false or made with reckless indifference to their truth, and had no intention of issuing the promised shares to Gill. Rather, it intended for Gill to rely on the representations and therefore invest money in EDI.

43. EDI's material representations, backed by the SAFE and the Advisory Agreement, induced Gill to invest $100,000 in the company—much-needed funds that allowed the company to grow to its current size.

44. As such, EDI fraudulently obtained money from Gill, and Gill was harmed by EDI's fraudulent actions because he was deprived of the shares and their value, estimated at $9,894,866.79.

### DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Stephen J. Gill demands a trial by jury of all issues so triable.

### RELIEF REQUESTED

Plaintiff Stephen J. Gill asks this Court to enter judgment against Defendant Everyday

Dose, Inc. granting the following relief:

1. An order for specific performance of the SAFE, namely that EDI transfer to Gill the 110,045 shares in the company to which Gill is entitled under the SAFE, worth $2,134,866.79.

2. An order for specific performance of the Advisory Agreement, namely that EDI transfer to Gill the 400,000 shares in the company to which Gill is entitled under the Advisory Agreement, worth approximately $7,760,000.00;

3. In the alternative, damages in the amount of the value of the 510,045 shares to which Gill is entitled under the SAFE and Advisory Agreement, estimated at $9,894,866.79;

4. Prejudgment interest;

5. An award of Gill's costs of suit, including the costs of experts and reasonable attorneys' fees as permitted by law; and

6. Such other and further relief as this Court or a jury may deem proper and just.

Dated: December 11, 2024 By: _/s/ Cortlan S. Hitch_
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720 )
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
kdorsney@morrisjames.com
CHitch@morrisjames.com

Derek A. Newman (*pro hac vice* to be filed)
Newman LLP
11 Broadway, Suite 615
New York, NY 10004
(212) 377-0870
dn@newmanlaw.com

**ATTORNEYS FOR PLAINTIFF
STEPHEN J. GILL**