IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEPHEN J. GILL and <br> PARKER DETWEILER, <br><br> Plaintiffs, <br><br> v. <br><br> EVERYDAY DOSE, INC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br> C.A. No. 24-1359-RGA |

**REPORT AND RECOMMENDATION**

Presently before the Court is the motion of Defendant Everyday Dose, Inc. ("Defendant" or "EDI") to partially dismiss Count I and to dismiss Counts II, III and IV in their entirety from the First Amended Complaint. (D.I. 27). For the reasons set forth below, the Court recommends that Defendant's motion be GRANTED-IN-PART and DENIED-IN-PART.

**I.    BACKGROUND**

Plaintiffs Stephen J. Gill ("Gill") and Parker Detweiler ("Detweiler") (together, "Plaintiffs") are financial advisors and colleagues. (D.I. 21 ¶¶ 1, 18 & 19). Defendant EDI is a Delaware company engaged in the businesses of coffee and wellness products. (*Id.* ¶ 20). In the spring of 2021, EDI's Founder and CEO, Jack Klauber ("Klauber"), and Gill began discussing the possibility of the latter investing in EDI and assuming an advisory role for the company. (*Id.* ¶ 21). In May 2021, Klauber offered Gill a position as an advisor to EDI to be compensated with equity, and Klauber provided Gill with a draft advisory agreement reflecting that proposal ("the Advisory Agreement"). (*Id.* ¶ 23).[1] The Advisory Agreement apparently provided that Gill would receive

---

[1]    Plaintiffs do not attach any of the relevant agreements to the First Amended Complaint. Defendant attached various documents to its opening brief, including the various agreements and other correspondence. (D.I. 28, Exs. 1 & 1A (draft advisory agreement);

8% of EDI's equity (roughly 800,000 shares) in exchange for his investment in EDI and advisory services. (*Id.*). Klauber also sent the agreement to Detweiler at the same time, promising the same structured exchange of equity for advisory services. (*Id.*).

Several weeks after receiving the initial draft of the Advisory Agreement, Gill sought "more immediate equity ownership" in EDI in exchange for his anticipated services. (D.I. 21 ¶ 24). Specifically, he requested immediate vesting of 2% equity (approximately 200,000 shares) upon execution of the Advisory Agreement, with the remaining 6% to vest over four years. (*Id.*). Klauber resisted the requested change (*id.* ¶ 25), but Gill and EDI remained interested in working with each other (*id.* ¶ 26). Neither Gill nor Detweiler ever executed any version of the Advisory Agreement. (*Cf. id.* ¶ 54 ("By virtue of the communications and conduct between the parties . . . binding advisory contracts were formed between each Plaintiff and EDI.")).

In June 2021, however, Gill invested "significant capital" in the company, including a $100,000 investment pursuant to a Simple Agreement for Future Equity ("the SAFE"). (D.I. 21 ¶ 26). According to the terms of the SAFE, which was executed on June 16, 2021, Gill invested $100,000 in exchange for the right to receive EDI stock upon the occurrence of certain triggering events specified in the SAFE. (*Id.*; *see also id.* (triggering events include financing event, IPO, change of control, etc.)). At the same time the SAFE was executed, the parties also entered into a Side Letter, which provided that EDI would commit to issuing equity grants to Gill and Detweiler consistent with the terms of the proposed advisory agreements. (*Id.* ¶ 27). The Side Letter also provided Gill with either a seat on the board of directors or the ability to attend board meetings. (*Id.*).

---

*id.*, Ex. 5A (executed Simple Agreement for Future Equity); *id.*, Ex. 5B (side letter agreement to Simple Agreement for Future Equity)).

According to Plaintiffs, Klauber's representations in spring 2021 that EDI had "authorized and committed to issuing equity to Plaintiffs under formal Advisory Agreements" were false – and Klauber knew he lacked the authority and approval to make such an offer. (D.I. 21 ¶ 29; *see also id.* ¶¶ 31 & 39). Nevertheless, in reliance on these statements, Plaintiffs began performing their advisory and marketing services in August 2021. (*Id.* ¶ 30). Plaintiffs allege that they "dedicated substantial time and resources" in promoting EDI and attempting to grow the company through investor networking – with the expectation that equity compensation would be provided. (*Id.* ¶ 33; *see also id.* ¶ 42). Plaintiffs performed these services without salary or compensation (including reimbursement for out-of-pocket expenses) because Klauber's statements led them to believe that equity ownership in EDI was forthcoming. (*Id.* ¶ 43; *see also id.* ¶ 41 (alleging EDI made false statements about financial status and business operations)).

Plaintiffs also allege that Klauber made additional false representations about EDI after the SAFE and Side Letter were executed. In particular, Plaintiffs allege that, in May 2023, Klauber indicated that EDI "was operating at a run rate of $25,000,000" but that the real financial picture at that time was "materially different." (D.I. 21 ¶ 36). Additionally, in September 2023, EDI apparently indicated that a competitor, Ryze, was generating $22,000,000 in revenues per month and spending $500,000 per day in advertising on an "unprofitable and inferior product" – and that EDI was performing even better. (*Id.* ¶ 37). Plaintiffs allege that these statements were materially false or gross exaggerations but that Plaintiffs reasonably relied upon these representations in continuing to perform services for EDI. (*Id.* ¶¶ 36-37).[2]

---

[2] Plaintiffs also allege that Klauber made additional representations about a vegan dose creamer in August 2021, but it is unclear what those representations were or how they proved to be false. (*See* D.I. 21 ¶ 32).

3

On July 8, 2024, a "qualified financing event" contemplated by the SAFE apparently occurred. (D.I. 21 ¶¶ 34, 44 & 45). Plaintiffs allege that, under the SAFE's terms, triggering of the "qualified financing event" required EDI to automatically issue equity to Gill. (*Id.* ¶¶ 26, 34, 44 & 45). In particular, Gill should have received about 110,425 shares of preferred stock after EDI reached the triggering valuation. (*Id.* ¶ 45). EDI did not, however, issue any shares to Gill. (*Id.*). In fact, to date, neither Plaintiff has received any equity under the SAFE or any other agreement despite providing advisory services to EDI for years. (*Id.*). Gill has also not been provided a board position or the ability to observe board meetings as promised by the SAFE. (*Id.* ¶ 44).

On December 11, 2024, Gill filed the original Complaint, asserting against EDI claims for breach of contract (for the SAFE and Advisory Agreement) and a claim of "fraud." (D.I. 1). On March 31, 2025 and in response to a motion to dismiss filed by Defendant, Gill filed a First Amended Complaint, which added Detweiler as a plaintiff, restyled the "fraud" claim as fraudulent inducement and added a claim of promissory estoppel. (D.I. 21).

On April 14, 2025, Defendant filed the present motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b), arguing that the claim for breach of the SAFE (Count I) should be dismissed to the extent it is asserted by Detweiler and, further, that the claims for breach of the Advisory Agreements (Count II), fraudulent inducement (Count III) and promissory estoppel (Count IV) should be dismissed in their entirety. (*See* D.I. 28). Briefing was complete on May 12, 2025. (D.I. 31 & 33).

## II.     LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of*

4

*Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008).  The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences.  *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

**III.   DISCUSSION**

Defendant seeks to dismiss the claims of breach of contract based on the Advisory Agreement (Count II), fraudulent inducement (Count III) and promissory estoppel (Count IV). Defendant also seeks dismissal of the breach of contract claim based on the SAFE (Count I) to the extent that it is asserted by Detweiler.  The Court begins with the latter.

    **A.   Count I – Breach of Contract (the SAFE)**

Defendant argues that the SAFE breach-of-contract claim in Count I should be dismissed as to Detweiler because the First Amended Complaint does not allege that he entered into a SAFE with EDI.  (D.I. 28 at 7).  In their answering brief, Plaintiffs do not address Defendant's argument

as to Count I, but Plaintiffs do acknowledge that Detweiler "was not a signatory to the SAFE." (D.I. 31 at 16). The Court construes this to mean that Plaintiffs are not asserting a breach of contract claim on behalf of Detweiler regarding the SAFE. To the extent that Count I asserts a claim on behalf of Detweiler, the Court recommends that that claim be dismissed.

### B. Count II – Breach of Contract (Advisory Agreements)

In Defendant's view, the unexecuted Advisory Agreements are not enforceable contracts and Plaintiffs' claim for breach of those agreements (Count II) must be dismissed. (*See* D.I. 28 at 7-10).[3] Defendants identify the following deficiencies for Count II: (1) Plaintiffs never plead an intent to be bound by an advisory agreement (*id.* at 7-9), (2) Plaintiffs' incorporation-by-reference theory fails as a matter of law (*id.* at 9-10), (3) the Side Letter is an unenforceable "agreement to agree" (*id.* at 10-11) and, finally, (4) the promise in paragraph 4 of the Side Letter is barred by the statute of limitations or the doctrine of laches (*id.* at 11-12). In their answering brief, Plaintiffs do not address any of these arguments. In fact, Plaintiffs' do not mention Count II at all, instead focusing only on the issues related to the fraud and promissory estoppel claims (Counts III and IV). (*See generally* D.I. 31). In the Court's view, Plaintiffs have conceded the deficiencies in pleading Count II raised by Defendant. *See Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 477-78 (D. Del. 2021) ("As Defendants raised the issue of insufficiency of the Notice Letter's contents to provide pre-suit knowledge in their motion and Plaintiff did not respond, it is considered to have conceded the issue."); *RBAHTDSR, LLC v. Project 64 LLC,* C.A. No. 19-1280-RGA, 2020 WL 2748027, at *4 n.2 (D. Del. May 27, 2020) ("[W]hen one side files a motion

---

[3] Plaintiffs do not allege that Gill or Detweiler executed any version of the Advisory Agreement, instead asserting that the parties' "communications and conduct" resulted in the formation of "binding advisory contracts." (D.I. 21 ¶ 54).

6

raising an issue, and the other side does not respond, the other side is considered to have conceded the point."). The Court thus recommends that Count II be dismissed.

### C.   Count III – Fraud (Fraudulent Inducement and Misrepresentation)

Defendant argues that Plaintiffs' fraud claim fails for several reasons. (*See* D.I. 28 at 12-17 (barred by statute of limitations, violates Delaware's anti-bootstrapping doctrine and is not pleaded with particularity as required by Rule 9(b))).[4] The Court begins with a threshold issue – whether Plaintiffs' fraud claim is barred by the statute of limitations. *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (limitations defense may be raised by Rule 12(b)(6) motion where "time alleged in the statement of a claim" shows that the claim was not brought within applicable statute of limitations).

"The Delaware statute of limitations for claims that sound in fraud is three years." *Kirchner v. Wyndham Vacation Resorts, Inc.*, 580 F. Supp. 3d 57, 63 (D. Del. 2022) (citing DEL. CODE ANN. tit. 10 § 8106(a)). "A claim for fraudulent inducement accrues when the alleged fraudulent statements were made, which must be on or before the date when the parties entered into the contract." *DuBose v. Wyndham Vacation Resorts, Inc.*, C.A. No. 20-1118-CFC, 2021 WL 3145206, at *3 (D. Del. July 26, 2021) (cleaned up). Plaintiffs allege that EDI (through Klauber) fraudulently induced Plaintiffs to enter into the SAFE and Side Letter by misrepresenting EDI's promise (or ability) to pay equity compensation to Plaintiffs. (D.I. 21 ¶¶ 59-65). Plaintiffs further allege that the SAFE and Side Letter were executed on June 16, 2021. (*Id.* ¶¶ 26 & 44). Because this case was filed on December 11, 2024 – more than three years after the contracts were formed – Defendants argue that Plaintiffs' fraudulent inducement claims are time-barred. (D.I. 28 at 13).

---

[4]   Although neither side makes clear which state law governs the purported contracts or conduct at issue here, both sides consistently cite Delaware law.

Although certain doctrines may toll the statute of limitations, *e.g.*, *Lehman Bros. Holdings, Inc. v. Kee*, 268 A.3d 178, 186 (Del. 2021) (discovery rule or fraud), Plaintiffs do not raise any basis for tolling in their pleading or answering brief. In fact, Plaintiffs do not address the statute of limitations ***at all*** in their response, nor do they attempt to argue that Defendant's alleged misrepresentations were separate instances of fraud distinct from a fraudulent inducement claim. (*See* D.I. 31 at 3 (reiterating Count III "is a claim for fraudulent inducement, premised on lies that led Plaintiffs to enter agreements and expend resources"); *id.* at 14 ("the fraud claim" is "based on the breach of a promise to issue stock" and "also encompasses false statements . . . that induced Plaintiffs to go along" and "were part of the inducement and context of the deal")). Plaintiffs' failure to respond to Defendant's motion again has consequence. *See Bench Walk*, 530 F. Supp. at 477-78. Because the Court has no basis to conclude that the date Plaintiffs discovered the fraud is later than the date of the agreements – and Plaintiffs do not argue otherwise – the statute of limitations started to run on the day the SAFE and Side Letter were executed (June 16, 2021). The present action was filed on December 11, 2024 – more than three years later. Therefore, any fraudulent inducement claims based on the SAFE and the Side Letter appear time-barred. And any later misrepresentations regarding EDI's financial condition to induce continued performance (D.I. 21 ¶¶ 66-69) cannot create a claim of fraudulent inducement. *See, e.g.*, *Hiller & Arban, LLC v. Rsrvs. Mgmt., LLC*, No. CV N15C-02-161 WCC, 2016 WL 3678544, at *4 (Del. Super. Ct. July 1, 2016). As such, the Court recommends that Count III be dismissed.[5]

---

5   Defendant also argues that Plaintiffs' fraudulent inducement claim violates Delaware's anti-bootstrapping doctrine and that Plaintiffs failed to plead their fraud claim with particularity under Rule 9(b). (D.I. 28 at 14-17). Because the Court recommends dismissal based on statute of limitations, the Court does not reach these alternative arguments.

### D. Count IV – Promissory Estoppel

Defendant argues that the promissory estoppel claim should be dismissed because it is an improper vehicle for attempting to enforce contractual promises. (D.I. 28 at 18). Plaintiffs respond that the claim of promissory estoppel is pled in the alternative. (D.I. 31 at 15-17). In Plaintiffs' view, if the Court concludes that the Side Letter is not an enforceable contract between the parties, then Plaintiffs are allowed to proceed under a claim of promissory estoppel to recover the allegedly promised equity compensation. (*Id.* at 16). The Court agrees with Plaintiffs.

"[T]he doctrine of promissory estoppel is properly understood as a consideration substitute in cases where a contract has not been formed." *Chrysler Corp. (Del.) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1031 (Del. 2003). Delaware courts have therefore recognized that a claim for promissory estoppel may be pled in the alternative to a claim for breach of contract. *See Ramone v. Lang*, No. Civ.A. 1592-N, 2006 WL 905347, at *14 (Del. Ch. Apr. 3, 2006) (plaintiff could prevail on promissory estoppel claim, pled in the alternative, where there was not an enforceable contract); *1 Oak Priv. Equity Venture Cap. Ltd. v. Twitter, Inc.*, C.A. No. N14C-10-186 EMD CCLD, 2015 WL 7776758, at *12 (Del. Super. Ct. Nov. 20, 2015) ("Ultimately, 1OAK cannot succeed on both the breach of contract and promissory estoppel claims; however, at this stage of the litigation, 1OAK can plead alternative theories of liability." (footnote omitted)); *see also Chrysler*, 822 A.2d at 1031 (noting that Delaware Superior Court Civil Rules permit pleading in the alternative and finding it proper for "distinct claims based upon contract principles and upon the doctrine of promissory estoppel" to be submitted to the jury as "alternative theories of recovery"). At this stage, Plaintiffs' claim for promissory estoppel may proceed in the alternative to their breach of contract claim.

The only basis for dismissal of Count IV raised in Defendant's opening brief is that promissory estoppel cannot be used to enforce the terms of a contract. (*See* D.I. 28 at 18-19). In its reply brief, however, Defendant adds new grounds for dismissal. In reply, Defendant argues that Plaintiffs fail to plausibly allege a clear and definite promise and reasonable reliance on that promise – elements of a promissory estoppel claim. (D.I. 33 at 7-10). But arguments raised for the first time in a reply brief are improper and will not be considered. D. DEL. LR 7.1.3(c)(2); *see also Semcon Tech, LLC v. Micron Tech., Inc.*, C.A. No. 12-532-RGA, 2017 WL 2591945, at *3 (D. Del. June 15, 2017) ("I decline to consider this new argument raised for the first time in reply.").[6]

The Court thus recommends that Defendant's motion to dismiss be denied as to Count IV.

### E.  Plaintiffs' Request for Leave to Amend

In a few sentences in their opposition brief, Plaintiffs generically request leave to amend in the event that the Court "identifies any pleading deficiency." (D.I. 31 at 1 & 20). Under these circumstances, the request for leave to amend is not adequately before the Court. *See LabMD Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022) ("[A] plaintiff must properly request leave to amend a complaint in order for the district court to consider whether to permit amendment. A plaintiff properly requests amendment by asking the district court for leave to amend and submitting a draft of the amended complaint, so that the court can judge whether amendment would be futile. The court may deny leave to amend if the plaintiff does not provide a draft amended complaint." (citations omitted)). Plaintiffs' request for leave to amend is therefore denied.

---

[6]  The Court declines to do so even though Plaintiffs addressed the elements of a promissory estoppel claim in their answering brief. If Defendant contends dismissal is warranted because certain elements of a promissory estoppel claim are inadequately pleaded, those arguments must be presented in the opening brief.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's motion to dismiss (D.I. 27) be GRANTED-IN-PART and DENIED-IN-PART.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2). Any responses to the objections shall limited to ten (10) pages and filed within fourteen (14) days after the objections. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: December 11, 2025

_____
UNITED STATES MAGISTRATE JUDGE