IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEPHEN J. GILL, and PARKER DETWEILER,<br><br>Plaintiffs,<br><br>v.<br><br>EVERYDAY DOSE, INC., a Delaware Corporation,<br><br>Defendant. | C.A. No. 1:24-cv-01359-RGA |

STATEMENT OF CHARLES L. SLAMOWITZ, ESQUIRE
IN RESPONSE TO DECEMBER 11, 2025, ORDER TO SHOW CAUSE

Respondent Charles L. Slamowitz respectfully submits this Statement in response to the Court's Order to Show Cause dated December 11, 2025. Pursuant to Federal Rule of Civil Procedure 6(a)(1)(C), where the last day of a filing period falls on a legal holiday, the deadline extends to the next business day. Consistent with that rule, this Statement is submitted on December 29, 2025.

Respondent understands and takes seriously the concerns raised by the Court. Respondent acknowledges hereto that Plaintiffs' answering brief filed at D.I. 31 had hereby contained certain errors, including the incorrect citations to cases not existing as cited, and explanatory parentheticals that did not accurately reflect the cited authorities, including without limitation to Delaware law. These errors should not have occurred, and Respondent sincerely apologizes to the Court, especially since Respondent has worked with counsel retained for this very purpose as provided, so the Court would not have to deal with certain cites and inclusion below our standards accordingly.

This Statement responds directly to the Court's directive that Plaintiffs' counsel explains whether, and to what extent, artificial intelligence (or "AI") was used in drafting the answering brief, whether artificial intelligence was used in any prior pleadings or filings, and whether sanctions are warranted under the circumstances presented.

## Background

Indeed, and with certainty, Respondent hereby represents and affirms that, at no time did Respondent knowingly make a false statement of fact or law to this Court, fabricate legal authority, or intend to mislead the Court or opposing counsel. Respondent did not knowingly submit fictitious cases, fabricated quotations, or false legal support. Consistent with Model Rule of Professional Conduct 3.3(a)(1), Respondent lacked actual knowledge that any authority cited in the answering brief was inaccurate or non-existent at the time of filing, especially with guided final counsel here.

Respondent further acknowledges that the failure to, at the end before filing by retained co-counsel, independently verify all citations and quoted parentheticals against primary sources prior to filing constituted a lapse in professional judgment. Respondent accepts responsibility for that lapse. Respondent has practiced law for approximately eight years without disciplinary history, sanctions, or prior findings of professional misconduct.

## Artificial Intelligence Use and Limits

Respondent understands that artificial intelligence in certain instances does not cite correctly or provide proper context. Indeed, Respondent, knowing this to be true, did not personally use artificial intelligence tools to generate legal authorities, citations, or explanatory parentheticals in the answering brief. Following issuance of the Court's Order, Respondent investigated the drafting history and learned that Zack V. Sharpe, IV, who was affiliated with Respondent's firm during the

relevant period, used artificial intelligence tools during preliminary, outline-level drafting in late April 2025 into May 2025 accordingly. Respondent was not aware at the time of filing that artificial intelligence tools may have been used during those stages, and it appears so. Respondent, however, does not claim here that any person nor staff knowingly submitted something false to the Court, and Respondent, after thorough investigation, does not have any evidence of the same, here.

Just like Respondent, Mr. Sharpe did not sign the answering brief, or any of the pleadings to the Court. Mr. Sharpe further provided her did not verify the case cite contents at the filing, as Respondent also trusted co-counsel that spent hours and months on the case before they signed, verified and filed alone without Respondent or Mr. Sharpe in this case.

After internal discussion in or around the time of filing the answering brief, on or about May 5, 2025, Mr. Sharpe was ultimately removed from further involvement, and his *pro hac vice* admission was withdrawn on or about May 22, 2025. We also provided not to work with counsel retained and acknowledged to client the tight deadlines and changes before filing did not align with internal standards, especially given the issues and discussion with Mr. Sharpe therefrom, the output, filed and signed, and trusted to be verified by the counsel submitting.

Respondent further represents that, to Respondent's knowledge, artificial intelligence tools were not used in the drafting of any other pleadings or filings submitted in this action. To the limited extent artificial intelligence tools were used within the firm, such use was non-substantive and incidental, did not involve the generation of legal authorities or citations, and was not intended to mislead the Court whatsoever, in any way. The material over form was the crux of this Court's decision and recommendation as provided, and all cites were not provided to sway this Court here.

**Retention and Agreed Upon Role of Counsel**

Respondent's firm had contacted and retained Swartz Campbell LLC as Delaware counsel and paid that firm directly for Delaware-specific legal guidance, compliance with this Court's rules, and substantive review. This was also with direction from the client that Delaware counsel would actually provide substantive work, not mere filings like a courier, in which they agreed, were retained, and were signed up accordingly. Respondent was referred to a different attorney within the firm, but Joeseph Naylor, Esquire shared competence. Swartz Campbell worked on this matter for months prior to the filing at issue, including a second amended complaint, during which time they reviewed and edited multiple drafts of the answering brief, participated in substantive discussions regarding Delaware law and the framing of claims, and ultimately signed and filed the version submitted to the Court. Joeseph Naylor and Swartz Campell accepted payment, signed with our law firm in the representation, and agreed upon verification, strategy drafting, checking, filing, signature, and *inter alia* conformity with Delaware law and federal law on all accounts. This isn't to say Respondent did not also work on the matter, in fact, Respondent did counsel here prior to filings, and Respondent owns this, while still noting no intentional wrongdoing here to the Court.

Further, Respondent does not contend that retention of Delaware counsel relieved Respondent of an independent duty of diligence, in which Respondent was counseling here, as well. Respondent acknowledges that he should have independently verified the citations rather than relying on the understanding that the filing had been fully reviewed and finalized for submission. Upon learning of the deficiencies identified by the Court, Respondent advised the client that he did not wish to continue working with that counsel and that no further work would proceed on the matter unless and until the terms of representation were appropriately resolved. Respondent is no longer involved in this matter, and Respondent had refuted terms and conditions with this counsel.

**Material Context and Substance of the Claims**

The answering brief addressed the interpretation and enforcement of a side letter associated with Stephen Gill's SAFE investment and related contractual rights, and an argument was made with Parker Detweiler, as well. This is beyond the fraud argument, which was not the crux, however, Swartz Campell and client all agreed on filing after conferring near the deadline but certainly was told can be made hereto. The legal theories further advanced rested on established principles of Delaware contract law, including incorporation by reference, promissory representations, and good-faith performance, and on factual allegations pled in detail. Respondent respectfully submits that the citation errors, while serious, did not materially alter the substance of the arguments presented or impair the Court's ability to evaluate the merits of Plaintiffs' claims.

**Federal Rules Obligations and Materiality**

Critically, Federal Rule of Civil Procedure 11(b) provides that by presenting a written paper to the Court, an attorney certifies that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the legal contentions are warranted by existing law. The Supreme Court has held that this obligation is personal and nondelegable. *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989). Here, counsel did not even check the cover page of the cites or Delaware law application in expected for veracity and filing, even in accordance with a mere paralegal for us, even though retained for more, hereto, in which Delaware counsel was paid and notified of client requests until deadlines and agreed.

Of significance here, Courts have further made clear that the emergence of artificial intelligence does not alter this duty. In *Wadsworth v. Walmart Inc.*, No. 2:23-CV-118-KHR, 2025 WL 608073, at *4–*6 (D. Wyo. Feb. 24, 2025), the court held that citation to non-existent opinions violates

Rule 11(b)(2) and emphasized that an attorney's obligation to conduct a reasonable inquiry into the law is not excused by reliance on artificial intelligence or other drafting sources. The court, in the recent decision this year, further explained that blind reliance on another attorney or tool does not satisfy Rule 11's requirements. *Id.* at *5–*6.

Respondent does not dispute the seriousness of the citation errors identified by the Court. Respondent respectfully submits, however, that the errors were not the product of bad faith, did not mislead the Court, and did not materially affect any ruling, scheduling decision, or procedural outcome. The legal propositions advanced were well established and did not depend on the erroneous authorities accordingly.

## **Remedial Measures**

Respondent represents, that upon learning of the Court's concerns Respondent immediately reviewed, and implemented comprehensive remedial measures to ensure this issue does not recur, including (1) conducting an internal investigation to determine how the citation errors occurred and the extent to which artificial intelligence was used in preliminary drafting; (2) terminating involvement by those responsible for preliminary AI-assisted drafting; (3) ceasing work with Delaware counsel in this matter; (4) restricting any use of artificial intelligence tools to non-authoritative research assistance only; (5) mandating primary-source verification of all legal authorities and quoted parentheticals prior to submission; (6) implementing redundant internal review procedures; and (7) adopting a final pre-filing verification protocol applicable to all future submissions.

## **Conclusion**

Therefore, Respondent respectfully requests that the Court consider the full factual and legal context and resolve this matter without the imposition of sanctions. Respondent did not knowingly submit false authority or intend to mislead the Court, acted promptly upon learning of the errors, and has taken concrete steps to ensure full compliance with this Court's expectations going forward accordingly.

Dated: December 29, 2025

**SLAMOWITZ SHARPE**

*/s/ Charles L. Slamowitz*
Charles L. Slamowitz
Respondent Counsel
One Manhattan Square
225 Cherry St. #46G
New York, New York 10002
charles@slamsharpe.com
Telephone: 941.529.7526