FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2026 JAN 14 AM 10:21

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

STEPHEN GILL, and

PARKER DETWEILER,

*Plaintiffs.*

v.

EVERYDAY DOSE, INC

*Defendant.*

C.A. No.1:24-cv-01359-RGA

**STATEMENT OF ZACK G. SHARPE, IV, ESQUIRE IN RESPOSNE TO THE COURT'S ORAL ORDER DATED JANUARY 8, 2026**

I respectfully submit this statement in response to the Court's Order dated January 8, 2026, to provide the Court with factual information regarding my limited involvement in this matter. While the Court's December 11, 2025 Order to Show Cause was directed to "Plaintiffs' attorneys" and I am no longer counsel of record (having withdrawn my pro hac vice admission on May 22, 2025), both Mr. Naylor's and Mr. Slamowitz's responses reference my role in drafting preliminary materials for the answering brief. Given the apparent disagreement between the signing attorneys regarding the sequence of events, I believe it would assist the Court to have a direct, factual account from me regarding what occurred.

I provide this information under penalty of perjury and in the interest of ensuring the Court has a complete and accurate record. I address the Court's specific inquiries regarding the use of artificial intelligence and the drafting history of the answering brief.

## I. Professional Background and Limited Involvement

I am a 2014 graduate of Columbia Law School with twelve years of legal experience. Since June 2024, I have served as in-house counsel for a global professional employer organization ("PEO") technology company and do not maintain any litigation practice.

To my knowledge, Mr. Slamowitz began representing Mr. Gill in or about January 2025, well before my involvement. I appeared pro hac vice in this case during a brief period when Mr. Slamowitz and I were exploring a potential professional association. I was brought in as an "add-on" to provide strategic credibility, but I never maintained a primary attorney-client relationship with the Plaintiffs and was viewed mainly as

credentialed background support. I received no compensation for my work and paid no fees to local counsel, Mr. Naylor.

My substantive work product concerning the matter at issue consisted solely of preparing a preliminary draft of the answering brief in April 2025 as a professional courtesy while evaluating whether to enter into a business relationship with Mr. Slamowitz—a relationship I ultimately decided not to pursue.

**II. Clarification Regarding My Professional Relationship with Mr. Slamowitz**

To ensure clarity for the Court's record: I was never employed by, associated with, or a partner in Slam Legal LLC ("Slam Legal"). Despite Mr. Slamowitz's use of the name "Slamowitz Sharpe" for marketing purposes in anticipation of a potential partnership, no formal professional relationship between us ever materialized.

My consideration of a potential association with Mr. Slamowitz was brief and exploratory. During my conversations with Mr. Slamowitz about potentially working together, I was clear that I had no interest in returning to litigation practice and that any association would need to be strictly limited to advisory and counseling work. Throughout our discussions, I maintained a consistent position that I was evaluating whether this type of arrangement would be beneficial.

On April 10, 2025—approximately one to two weeks before I completed the working draft—I filed incorporation papers for my own firm, Sharpe PLLC (d/b/a Sharpe Counsel), reflecting my decision to maintain independent practice rather than enter into any partnership or employment arrangement. *See* Ex. E, Incorporation Documents.

My pro hac vice admission in this case was obtained during the aforementioned brief exploratory period. However, I never:

- Received compensation for work on this matter;
- Entered into any fee-sharing arrangement with Slam Legal;
- Had signatory authority on any Slam Legal accounts;
- Had access to client funds or retainers;
- Held myself out to the public as a partner, associate, or member of Slam Legal LLC; or
- Maintained a primary attorney-client relationship with Slam Legal's clients.

Mr. Slamowitz's characterization in his response (D.I. 46-1) suggests that I was "affiliated with Respondent's firm during the relevant period" and that I was "removed from further involvement" after issues arose with the preliminary draft. (D.I. 46-1 at 2-3). In the interest of accuracy, my decision to decline the potential partnership was made independently and documented through my incorporation of a separate firm on April 10, 2025—before I even completed the working draft and nearly a month before the answering brief was filed. I was never "removed" from this matter. Rather, after deciding to pursue independent practice, I completed the working draft as a final act of professionalism to ensure the client's interests were protected, then formally withdrew approximately six weeks later.

This clarification is relevant because it establishes the scope of any obligations I may have had to the case or the client. My involvement was limited to the preliminary assistance I provided during the exploratory period, and my withdrawal was not reactive to any problems with the final answering brief—which I never saw or signed—but rather reflected a deliberate business decision to pursue independent practice.

**III. The Preliminary Draft and Handoff to Retained Counsel**

Mr. Slamowitz had primary responsibility for drafting the answering brief. By mid-April 2025, I had already incorporated my own firm and finalized my decision not to pursue any professional association with Mr. Slamowitz. However, as Mr. Slamowitz remained occupied with other matters and the filing deadline approached, I completed a working draft in or around the third week of April 2025 as a final act of professionalism to ensure the clients' interests were protected. The draft was stored on Slam Legal's shared drive.

On April 29, 2025, I alerted Mr. Slamowitz to the completed draft via text message to ensure he had sufficient time before the May 5 filing deadline. In that same message, I explicitly warned him that the draft required verification. The text of my message was:

> **I just sent you a draft that I made last week. . . . make sure all the references are correct - I didn't double check whether the cases are still good. . . . Maybe ask Delaware counsel to verify the case law . . . .**

Ex. A. Mr. Slamowitz replied, **"I see it have it fix it** . . . ." *Id.* I also suggested removing an argument that did not appear in the Amended Complaint, signifying that I knew the provided brief was only a working draft. *Id.*

In summation, and for the Court's convenience, the key facts from this exchange are as follows:

1. Mr. Slamowitz served as Plaintiffs' primary and lead counsel and was expected to draft the answering brief;
2. As a courtesy, I took the initiative to create a working draft approximately a week before April 29;
3. I alerted Mr. Slamowitz to the draft on April 29, providing him six days before the filing deadline (May 5, 2025);
4. I explicitly stated in the message itself that I had not verified whether the citations were correct ("I didn't double check whether the cases are still good");
5. I specifically instructed Mr. Slamowitz to verify the references and suggested involving Delaware counsel in that verification; and
6. Mr. Slamowitz acknowledged his responsibility to "fix it."

Following this exchange on April 29, I performed no further work on the brief. I never saw, reviewed, or approved any subsequent version. And I did not participate in the

revisions that allegedly occurred on May 5, 2025. I had no knowledge of what was ultimately filed with this Court until Mr. Slamowitz and Mr. Naylor individually contacted me after the Order to Show Cause was issued in December 2025. *To date, I have never viewed the final brief, and cannot verify what, if any, of what I outlined was included in the final draft.* I do not know which cases were used, quoted, misquoted or otherwise. I can provide no insight into the extent that such errors and omissions were made by either Mr. Slamowitz or Mr. Naylor.

**IV. Use of Artificial Intelligence in My Working Draft**

In direct response to the Court's inquiry regarding the use of artificial intelligence: I acknowledge that during my preliminary drafting in the third week of April 2025, I used AI-assisted research tools in combination with traditional legal research methods. At that time, Slam Legal LLC did not maintain subscriptions to professional legal research databases such as Westlaw or LexisNexis. I could not ethically use my employer's research tools for external work. Therefore, I supplemented my research using publicly available resources, including AI-powered search tools, alongside traditional methods such as Google Scholar.

I was aware at the time—and remain aware—that AI-generated content can contain errors, including fabricated citations and inaccurate quotations. This awareness is precisely why I issued the explicit warnings documented in Exhibit A when transmitting the working draft to Mr. Slamowitz. My instruction to "make sure all the references are correct" and to "ask Delaware counsel to verify the case law" was specifically intended to ensure that any errors in my preliminary work would be caught and corrected before filing.

I did not use AI to generate the preliminary draft in its entirety, nor did I knowingly include fabricated citations or false quotations. However, I acknowledge that given my research methodology and the preliminary nature of my work, independent verification by retained counsel was essential—which is why I expressly required it as a condition of using the draft.

To address the Court's inquiry completely: I used AI-assisted research tools only in connection with the preliminary draft of the answering brief discussed above. I did not have a primary role or responsibility for drafting any other pleadings, filings, or substantive documents in this case. My involvement in any other work product was ancillary to Mr. Slamowitz's representation.

**V. My Withdrawal from the Matter**

Having already incorporated my own firm on April 10, 2025, I performed no work on this matter after sending the working draft and verification instructions on April 29, 2025. In early May 2025, I contacted Stephen Gill directly to inform him that I was withdrawing from representation in his case. When Mr. Gill did not respond to my initial contact, I followed up via email on or about May 20, 2025. *See* Ex. C. Following Mr. Gill's confirmation of receipt, I contacted local counsel Joseph Naylor to request that he withdraw my pro hac vice admission.

In my email to Mr. Naylor on May 20, 2025, I wrote:

> **I wanted to reach out to let you know that I will no longer be working with Charles and Slam Legal… I wanted to reach out directly to formally recuse myself from the matter and ask that you withdraw my pro hac vice admission at your earliest convenience.**

Ex. B. Mr. Naylor withdrew my pro hac vice admission on May 22, 2025.

I had no further involvement with this case and no access to case files after April 29, 2025. I was unexpectedly copied on client correspondence in December 2025 regarding the termination of Mr. Slamowitz's representation, at which point I immediately reminded Mr. Gill that I had withdrawn seven months earlier and explained that I had never been compensated for my limited assistance and never received any portion of the retainer. Ex. D.

> **Because I transitioned away from the matter over seven months ago, I do not have access to any of your client files, documents, or data. . . Regarding the financial aspects you mentioned, I was never compensated for my limited assistance, and I never received any portion of your retainer deposit.**

Mr. Gill subsequently thanked me for the reminder, and I was removed from the email chain. *Id.*

## VI. Request Regarding Oral Hearing

Given that I have not performed any work on this matter since April 29, 2025, withdrew my pro hac vice admission over seven months ago, have not had access to case files since April 2025, never reviewed nor signed the final brief, and cannot provide information about what occurred after my April 29 handoff to retained counsel, **I respectfully request that the Court excuse my attendance at the oral hearing scheduled for February 5, 2026.**

I currently reside in Manhattan, maintain an in-house position, and supplemental counseling and advisory practice. I do not have an active PACER account, and do not litigate. My only knowledge of the current proceedings comes from communications I received surrounding the instant Order to Show Cause. **If, however, the Court determines that my testimony would be helpful, I respectfully request permission to appear remotely.** I am available to answer any questions the Court may have regarding the working draft I provided, the verification instructions I gave, or the timeline of my involvement and withdrawal.

## VII. Conclusion

I have provided this information to assist the Court in understanding the full factual record regarding the drafting history of the answering brief and the use of artificial intelligence in the preliminary stages. I acknowledge that I used AI-assisted tools during my drafting in the third week of April 2025—after I had already

incorporated my own firm and decided not to pursue any association with Slam Legal—and that I provided explicit instructions requiring verification of all citations when I alerted Mr. Slamowitz to the completed draft on April 29.

The signing attorneys had at least six days after I alerted Mr. Slamowitz to the working draft, allegedly performed multiple rounds of revisions, and received clear instructions from me to verify citations before filing the brief. What occurred during that period and why the verification I alerted them was not performed are questions that the signing attorneys are better positioned to answer.

I remain available to provide any additional information the Court may require. Thank you for your consideration.

Respectfully submitted,

Zack G. Sharpe, IV
205 East 95 Street, 5B,
New York, New York 10128
zsharpe@sharpecounsel.com
201-500-4596

Dated: January 12, 2026

Exhibits:

1. **Exhibit A**: Text message exchange with Charles Slamowitz (April 29, 2025) documenting delivery of preliminary draft and verification instructions.
2. **Exhibit B**: Email to Joseph Naylor (May 20, 2025) regarding formal withdrawal.
3. **Exhibit C**: Email to Stephen Gill (May 20, 2025) regarding withdrawal from representation.
4. **Exhibit D**: Email correspondence with Stephen Gill (December 2025) reaffirming lack of involvement.
5. **Exhibit E**: Incorporation documents for Sharpe Counsel PLLC (filed April 10, 2025)