IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEPHEN J. GILL and PARKER DETWEILER, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) C.A. No. 24-1359-RGA ) |
| EVERYDAY DOSE, INC, | ) ) ) |
| Defendant. | ) |

## CERTIFICATION OF CONTEMPT

Court orders are not suggestions. And court orders to appear are not requests for availability or invitations for counterproposals of more convenient dates. An order to appear in person before a court carries the force of law – the violation of which has consequence. On February 5, 2026, Mr. Zack G. Sharpe, IV, Esq. did not appear at a show cause hearing despite the undersigned's previous and repeated orders for Mr. Sharpe to appear in person. The undersigned hereby certifies the following facts supporting a finding of contempt and ORDERS Mr. Sharpe to appear before the Honorable Richard G. Andrews on February 23, 2026 at 2:30 PM to SHOW CAUSE for why he should not be adjudged in contempt by reason of the facts certified herein.

**I.     BACKGROUND**

This case arises out of a purported business relationship between Defendant EveryDay Dose, Inc. ("Defendant" or "EDI") and Plaintiffs Stephen J. Gill and Parker Detweiler (together, "Plaintiffs"), in which Plaintiffs were to provide advisory services for EDI in exchange for equity in the company. (D.I. 21 ¶¶ 1, 18-20).[1] Plaintiffs never received the promised equity in EDI and, as a result, filed the present suit for breach of contract, fraudulent inducement and promissory

---

[1]     The Court has set forth a detailed factual background in a prior decision. (*See* D.I. 37).

estoppel. (*See* D.I. 1 (original Complaint by Gill for breach of contract and "fraud"); D.I. 21 (First Amended Complaint adding Detweiler as a plaintiff, restyling "fraud" to fraudulent inducement and adding promissory estoppel)).

On April 14, 2025, Defendant filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b), arguing that nearly all claims of the First Amended Complaint should be dismissed. (*See* D.I. 27 & 28). At all times relevant to this motion, Plaintiffs were represented by Joseph S. Naylor, Esq., Delaware counsel from Swartz Campbell LLC, as well as Charles Slamowitz, Esq. and Zack G. Sharpe, IV, Esq., New York attorneys admitted *pro hac vice*. (D.I. 13). On May 5, 2025, Plaintiffs filed an answering brief in opposition to Defendant's motion. (D.I. 31). As the undersigned discovered and indicated several months later, that opposition brief contained numerous AI hallucinations in the form of fictitious cases and non-existent legal quotes. (D.I. 38). Plaintiffs' attorneys were ordered to show cause for why they should not be sanctioned for violating Federal Rule of Civil Procedure 11(b) and Model Rule of Professional Conduct 3.3(a)(1) in connection with their use of AI. (*Id.*). In the months that followed, the undersigned received various written submissions from Messrs. Naylor, Slamowitz and Sharpe and, on February 5, 2026, the undersigned held a show cause hearing. (D.I. 42, 46, 55, 62, 69 & 71). Despite being repeatedly ordered to appear in person, Mr. Sharpe did not attend.[2]

## II.   LEGAL STANDARD

District courts are empowered to address disobedience to judicial orders through contempt sanctions. Contempt sanctions may be civil or criminal. Civil contempt is used to enforce compliance with a court order or to compensate for losses caused by non-compliance. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Criminal contempt, on the other hand, exists

---

[2]   The undersigned will issue a separate order on the AI-related sanctions in due course.

to punish past violations of court orders and to vindicate the court's authority. *Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 896-97 (3d Cir. 1992). The distinction between civil and criminal contempt often depends on the nature and purpose of the sanction. *Id.* at 896 ("Civil contempt sanctions are intended to coerce or to compensate; criminal contempt sanctions to punish."). Civil and criminal contempt may be imposed for the same conduct. *Id.*; *see also Latrobe Steel Co. v. United Steelworkers of Am., AFL-CIO*, 545 F.2d 1336, 1343 (3d Cir. 1976) ("[A] single act of contempt may give rise to both criminal and civil sanctions.").

Magistrate judges are empowered to enter orders of contempt to summarily punish misbehavior in the magistrate judge's presence that obstructs the administration of justice. 28 U.S.C. § 636(e)(2). Magistrate judges may also enter orders of contempt in civil and misdemeanor consent cases. *Id.* §§ 636(e)(3)-(4). In all other instances, the magistrate judge must certify facts to a district judge and order the contemnor to appear before the district judge to show cause as to why that person should not be held in contempt under the certified facts. *Id.* § 636(e)(6)(B). The district judge then conducts a de novo hearing and decides whether to impose punishment. *Id.*; *Taberer*, 954 F.2d at 903-04.[3]

### III. CERTIFICATION OF FACTS

Pursuant to 28 U.S.C. § 636(e)(6)(B), the undersigned certifies the following facts in support of a contempt finding against Mr. Zack G. Sharpe, IV:

1. February 18, 2025, Zack G. Sharpe, IV, Esq. was admitted to practice before this Court *pro hac vice*. (D.I. 13 (so ordered by Judge Richard G. Andrews on February 18, 2025)).

---

[3] After *Taberer*, Congress amended § 636(e) to expand the contempt authority of magistrate judges. The Third Circuit has made clear that that amendment did not affect the certification procedure employed herein. *See Wallace v. Kmart Corp.*, 687 F.3d 86, 92 (3d Cir. 2012) ("The amendments to § 636(e), while expanding magistrate judges' contempt authority, did not impact the certification procedure we addressed in *Taberer*.").

3

In applying for such admission, Mr. Sharpe certified that, pursuant to District of Delaware Local Rule 83.6, he was "submit[ting] to the disciplinary jurisdiction of this Court for any alleged misconduct which occurs in the preparation or course of this action." (D.I. 13 at 2). Mr. Sharpe remained an attorney of record until May 22, 2025. (D.I. 35).

2. On April 14, 2025, Defendant filed a partial motion to dismiss under Rules 12(b)(6) and 9(b), seeking to dismiss various claims of breach of contract, fraudulent inducement and promissory estoppel from the First Amended Complaint. (D.I. 27).

3. On May 5, 2025, Plaintiffs filed an answering brief in opposition to Defendant's motion to dismiss. (D.I. 31). That answering brief was signed by Joseph S. Naylor, Delaware counsel, and listed Charles Slamowitz from Slamowitz Sharpe in the signature block. Mr. Sharpe was not specifically listed in the signature block on the answering brief. This answering brief contained fictitious cases and false statements of law as hallucinated by AI.

4. On December 11, 2025, the undersigned issued an order identifying the AI hallucinations present in Plaintiffs' answering brief. (D.I. 38).[4] In particular, the undersigned identified two fictitious cases and at least five case citations where the explanatory parenthetical included quoted language that does not appear in the cited case. (*Id.* at 1). Because citation to fictitious cases and non-existent quotes falls within the conduct proscribed by Federal Rule of Civil Procedure 11(b) and Model Rule of Professional Conduct 3.3(a)(1), the undersigned ordered Plaintiffs' attorneys to show cause as to why they should not be sanctioned for violating these rules in connection with their use of AI in the answering brief. (*Id.* at 2-3).

---

[4] Also on December 11, 2025, the undersigned issued a Report and Recommendation on Defendant's motion to dismiss, recommending that the breach of contract and fraudulent inducement claims be dismissed. (*See* D.I. 37).

5.      On December 26, 2025, Joseph S. Naylor responded to the show cause order. (D.I. 42). In his response, Mr. Naylor discussed the role of Mr. Sharpe in drafting early "outlines" of the answering brief and indicated that Mr. Sharpe admitted to using AI in that process. (*Id.* at 5-6).

6.      On December 29, 2025, Mr. Slamowitz responded to the show cause order. (D.I. 46). In his response, Mr. Slamowitz also identified Mr. Sharpe as having used AI during "outline-level drafting" for the answering brief in question. (D.I. 46-1 at 2-3).

7.      Having reviewed the written responses from Messrs. Naylor and Slamowitz (and the implication of Mr. Sharpe), the undersigned recognized the need to hear from Mr. Sharpe himself on whether and how he used AI in drafting the answering brief in question (or any early outlines thereof). On January 8, 2026, the undersigned issued an oral order setting a show cause hearing for February 5, 2026 and specifically requiring Messrs. Naylor, Slamowitz and Sharpe to appear at the hearing. (D.I. 50). Mr. Naylor was ordered to serve a copy of the oral order setting this hearing on Messrs. Slamowitz and Sharpe, and he did so the same day. (D.I. 51).

8.      On January 12, 2026, Mr. Sharpe submitted a written response to the show cause order in which he admitted to using "AI-assisted research tools in combination with traditional research methods." (D.I. 55 at 4; *see also id.* ("I used AI-assisted research tools only in connection with the preliminary draft of the answering brief discussed above.")). Mr. Sharpe denied using AI to generate his preliminary brief "in its entirety," and he insisted that he warned Mr. Slamowitz to check (or have someone check) the authorities cited in his draft. (*Id.*). In his response, Mr. Sharpe requested excusal from the show cause hearing set for February 5, 2026 or for leave to appear remotely. (*Id.* at 5). The basis for this request was that Mr. Sharpe had not worked on the present case since April 29, 2025 and had purportedly never seen a final version of the answering brief.

(*Id.*).  Mr. Sharpe also indicated that he lives in Manhattan, works as an in-house attorney with a "supplemental counseling and advisory practice" and that he does not litigate.  (*Id.*).

9. On January 15, 2026, the undersigned denied Mr. Sharpe's request for excusal from or, in the alternative, for permission to appear remotely at the February 5, 2026 show cause hearing.  (D.I. 56).  Mr. Naylor served a copy of this order on Mr. Sharpe the same day.  (D.I. 57).

10. On January 27, 2026, Mr. Sharpe renewed his request to be excused from the February 5, 2026 show cause hearing.  (D.I. 62).  He also renewed his request for leave to appear remotely.  In support of his request, Mr. Sharpe reiterated his Manhattan residency and generically stated that his in-house counsel position at a "late-stage startup company" renders him "responsible for various time-sensitive tasks that require [his] presence."  (*Id.*).  He also stated that "in-person attendance would involve an entire workday including approximately six hours of travel, which is not possible given [his] professional obligations."  (*Id.*).  No further details were provided.

11. On January 28, 2026, the undersigned denied Mr. Sharpe's renewed request via oral order.  (D.I. 64).  In this order, the undersigned specifically indicated that Mr. Sharpe's personal appearance at the show cause hearing was required so that the Court could make credibility determinations.  (*Id.* ("Mr. Sharpe's testimony, alongside the other attorneys involved, is required for the Court to make credibility determinations as to what happened and why.").  The undersigned also noted the general prohibition against remote testimony by the Judicial Conference and under District of Delaware Local Rule 83.2.  (*Id.*).  Mr. Sharpe was again ordered to appear in person at the February 5, 2026 hearing and warned that further requests on the issue would not be entertained.  (*Id.*).  Mr. Naylor served a copy of this order on Mr. Sharpe the same day.  (D.I. 65).

6

12. Despite being warned not to contact the Court again on the issue,[5] by letter dated February 1, 2026, Mr. Sharpe again requested excusal from, or leave to appear remotely at, the show cause hearing. (D.I. 69; D.I. 70). In that request, Mr. Sharpe indicated he had done additional fact-finding since his earlier requests – fact-finding that suggested Mr. Slamowitz was completely to blame for the AI hallucinations cited to the Court (and other alleged professional misconduct). (D.I. 69 at 1-3). Mr. Sharpe insisted that it would be "manifest injustice" to compel Mr. Sharpe's physical presence at the show cause hearing. (*Id.* at 4-5; *id.* at 5 ("Compelling an attorney [Mr. Sharpe] to travel hundreds of miles to sit beside an individual [Mr. Slamowitz] who is the subject of their own pending Bar grievance for professional fraud is an extraordinary and traumatic burden.")). Mr. Sharpe also generically claimed that he was being forced "to choose between [his] professional obligations involving the EEOC and the Southern District of New York and appearing in person." (*Id.*). No further details regarding this excuse were provided.

13. On February 3, 2026, the undersigned again denied Mr. Sharpe's request for excusal from, or leave to appear remotely at, the show cause hearing. (D.I. 68). Mr. Naylor served a copy of that denial on Mr. Sharpe the same day. (D.I. 73).

14. Also on February 3, 2026, Messrs. Slamowitz and Sharpe sent a joint letter to the Court requesting a two-week adjournment of the February 5, 2026 show cause hearing. (D.I. 71). According to the letter, Mr. Slamowitz had a "previously scheduled" conflict in state court in New York and Mr. Sharpe's train from New York to Wilmington scheduled for February 5, 2026 was cancelled. (*Id.*). Both attorneys requested leave to appear remotely in the alternative.

---

[5] Throughout this process, Mr. Sharpe has repeatedly emailed and called chambers and the Clerk's Office staff. This continued even after the undersigned's warning.

15.     On February 4, 2026, the undersigned denied the joint request by Messrs. Slamowitz and Sharpe. (D.I. 72). As to Mr. Sharpe, he provided no explanation for why he could not take any of the other available trains from New York Penn Station to Wilmington scheduled for February 5, 2026. (*Id.*). The request for leave to appear remotely was again denied. And the undersigned warned that any future communications regarding the subject (including with chambers or Clerk's Office staff) would be grounds for additional standalone sanctions. (*Id.*). Mr. Naylor served a copy of this order on Mr. Sharpe the same day. (D.I. 73).

16.     Disregarding the previous warning, later in the day on February 4, 2026, Mr. Sharpe emailed a letter to the Clerk's Office regarding his "inability" to attend the February 5, 2026 show cause hearing. (D.I. 74). In that letter, he indicated that his absence was "dictated by logistical issues and preexisting fiduciary obligations previously outlined to the Court." (*Id.*). He was, however, "open to appearing before this Court on any of the following dates: February 9, 11, 13, 18, 20, 23, 25, or 27." (*Id.*) As for the reasons he could appear on these dates but not the one ordered by the undersigned: "On these specific dates, I work remotely and am not required to be in my employer's office; further, I will not have to participate in any conflicting litigation matters involving state, arbitration or federal bodies on behalf of my employer alongside outside counsel." (*Id.*).[6] Mr. Sharpe stated that he provided this information if the Court still requires his testimony "on a date that does not involve a direct conflict of [his] fiduciary duties." (*Id.*).[7]

---

[6]     Yet Mr. Sharpe previously indicated that he "do[es] not litigate." (D.I. 55 at 5).

[7]     Mr. Sharpe's "inability" to attend the show cause hearing has morphed from one reason to another. He first claimed to have no additional information. Then he claimed that traveling from Manhattan would involve an entire workday, which was not possible given "various time-sensitive tasks" at work that required his presence. Several days later, the EEOC and the Southern District of New York needed him. Then, all of a sudden, the train he booked to actually attend the show cause hearing was cancelled. And finally, multiple yet unspecified litigation matters in state, arbitration and federal bodies ultimately prevented Mr. Sharpe from appearing on February 5, 2026.

17. On February 5, 2026, the undersigned held a show cause hearing regarding Plaintiffs' attorneys' use of AI in connection with the answering brief in opposition to Defendant's motion to dismiss. (D.I. 75). Mr. Sharpe did not appear at the hearing, thus preventing the undersigned from fully investigating Mr. Sharpe's role in the AI hallucinations. (*Id.* at 94:12-96:25).

Despite the undersigned ordering Mr. Sharpe to appear in person at the show cause hearing no fewer than four times (D.I. 50, 56, 64, 68 & 72), and despite his knowledge of each such order (D.I. 51, 57, 65 & 73), Mr. Sharpe did not appear at the hearing on February 5, 2026. Mr. Sharpe acted as if it was simply his choice to appear. It was not. His failure to appear as required is at least a knowing violation of several court orders. And his status as an attorney makes his violation more deserving of scrutiny. The undersigned hereby certifies the foregoing facts to the Honorable Richard G. Andrews for contempt proceedings to ensure compliance with court orders and to vindicate the court's authority. *See Taberer*, 954 F.2d at 897 ("The power to punish those who refuse to obey the court's order to appear is essential to maintenance of the court's authority."). Mr. Sharpe is ORDERED to appear before Judge Andrews on February 23, 2026 at 2:30 PM in Courtroom 6A to SHOW CAUSE for why he should not be adjudged in contempt by reason of the facts certified herein.

Mr. Sharpe's conduct may constitute civil and criminal contempt, either or both of which may be imposed in this case. "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *Bloom v. Illinois*, 391 U.S. 194, 201 (1968). Mr. Sharpe has a constitutional right to be represented by counsel during such contempt proceedings, and he has a right to have the court appoint an attorney for him if he cannot afford one.

This Certification is filed pursuant to 28 U.S.C. § 636(e)(6)(B). The Clerk of Court shall serve a copy of this Certification on the United States. As provided under Federal Rule of Criminal Procedure 42(a)(2), the undersigned requests that the United States Attorney for the District of Delaware prosecute this matter.

The Clerk of Court shall also provide a copy of this Certification to the United States Marshals Service to effectuate personal service upon Mr. Zack G. Sharpe, IV, Esq.

Dated: February 9, 2026

_____
UNITED STATES MAGISTRATE JUDGE